

# SUPERIOR COURT OF WASHINGTON
# IN AND FOR KING COUNTY

| | |
|---|---|
| SUSAN CHEN and<br><br>NAIXIANG LIAN<br><br><br>Plaintiffs,<br>v.<br><br>THE CITY OF REDMOND<br><br><br>Defendant | No. 16-2-26013-6 SEA<br><br><br><br>COMPLAINT |

Page 1 of _____

## INTRODUCTION

Now comes Susan Chen and Naixiang Lian, Plaintiffs herein, pro se, and hereby files this action under 42 U.S. C. & 1983 to redress her civil and legal rights, and alleges as follows:

1. This lawsuit arises out of City of Redmond's negligence to supervise and train its employee to protect Plaintiff to be free from an unreasonable search and seizure.

2. The claims arise from a December 9, 2013 police report (#13-019402) in which Officer of the Redmond City Police Department ("RCPD"), acting under the color of state law, intentionally and willfully subjected plaintiff to, inter alia, false arrest and false imprisonment.

3. Plaintiffs seek monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs, and such other and further relief as the Court deems just and proper.

4. As a result of negligence of employees of Redmond City, Plaintiffs were deprived of their parental rights to Jason.

## JURISDICTION AND VENUE

1. This action is brought pursuant to 28 USC &1331, 42 USC&1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

2. The amount in controversy exceeds $7,000,000.00 excluding interest and costs.

3. Venue in laid within the United States District Court for the Western District Of Washington in that Defendant City Of Redmond is located within, and a substantial part of the events giving rise to the claim occurred within the boundaries of the Western District of Washington.

## PARTIES, JURIDICTION& VENUE

4. Plaintiff Susan Chen is a legal resident of the United States and at all times here relevant resided in King County, State of Washington.

5. Plaintiff Naixiang Lian is a legal resident of the United States and at all times here relevant resided in King County, State of Washington.

6. Detective Natalie. D'Amico was, at all times here relevant, a police officer of the RCPD, and as such was acting in the capacity of an agent, servant and employee of the City of Redmond. On information and belief, at all times relevant hereto, Officer N. D'Amico was plaintiff's assigned officer.

7. At all times Officer D'Amico was acting under color of state law, to wit, under color of the statues, ordinances, regulations, policies, customs and usages of the City of Redmond and State of Washington.

8. On October 19, 2016, a statutory tort claim was filed on behalf of Susan Chen and Naixiang Lian.

9. All acts and omissions forming the basis of this Complaint occurred in King County, Washington. Pursuant to RCW 4.12 et seq., jurisdiction is vested with this court.

10. Venue is proper in King County Superior Court because all pertinent acts and omissions occurred in King County, Washington.

## NOTICE OF CLAIM

11. Plaintiff timely filed tort claim with City of Redmond Risk Management department, setting forth the facts underlying Plaintiff's claim against Detective D'Amico and Defendant CITY OF REDMOND.

## **FACTUAL ALLEGATIONS**

12. Plaintiffs Susan Chen and Naiiang Lian are Chinese citizen, legally residing in the United States.

13. Plaintiffs' primary language is Chinese. They have some ability to communicate in English.

14. On the afternoon of Oct 23, 2013, Plaintiff Susan Chen brought her son, Jason Lian to have a follow up appointment with Dr. Kate Halamay at Pediatric Associates. Ms. Chen and Dr. Halamay had friction and Ms. Chen decided to complain the doctor but was treated with a CPS referral based on twisted facts in which the child was described as having "kidney failure" and "life threatening". (NOTE, on Aug 30, 2013, the child saw Dr. Halamay for the same situation, i.e. elevated creatinine. Repeated labs indicated that the elevated creatinine is due to the dehydration caused by diarrhea, but not any kidney disease). However, the child was just discharged from ER of Seattle Children's Hospital as "medical stable discharged home".

15. On the morning of Oct 23, 2013, Plaintiff Susan Chen brought her son, Jason Lian saw his regular doctor, Dr. Gbedawo who reached the same conclusion as the ER doctor from Seattle Children's Hospital that the child is medically stable, only needs to follow up in 10 days.

16. On the night of Oct 24, 2013, a CPS social work named Brian Davis was assigned to remove the child who described the child's situation as "sleep peacefully and soundly" based on his observation.

17. Plaintiffs' son Jason Lian was removed to Seattle Children's Hospital based on Dr. Halamay's diagnosis for "kidney failure". Several hours later, the repeated tests for

Page 4 of _____

creatinine (kidney function) indicated that the creatinine was 0.5, a normal number for kidney function, consistent with the ER doctor and Dr. Gbedawo's conclusion.

18. On Oct 24, 2013, Officer N. D'Amico was assigned to investigate a possible child abuse case for Jason Lian (the son of plaintiffs, Susan Chen and Naixiang Lian).

19. On Oct 24, 2013, according to police investigation report, Officer N. D'Amico went to Plaintiffs' home to check Leo Lian (plaintiffs' older son)) who explicitly said No to the officer's questions about any possible abuse from parents. Leo Lian also made it clearly to the officer that the parents that his parents did not hurt him and his brother. He responded "NOT hungry" to Detective D'Amico's question if he is getting enough to eat.

20. On the evening of Oct 24, 2013, Detective N. D'Amico met with Plaintiffs Susan Chen and Naixiang Lian at home. According to the investigation report, "It was apparent Susan spoke English as a second language and we had some trouble communicating". No interpreter was provided for the whole conversation. Plaintiff Naixiang Lian admitted that he prepares three meals a day for the family, but NOT Plaintiff Susan Chen. Plaintiff Naixiang Lian admitted that he is responsible for feeding children twice a day (breakfast and dinner), NOT Plaintiff Susan Chen.

21. On Oct 25, 2013, Officer N. D'Amico assisted Child Protective Service to remove plaintiffs' older son Leo Lian into state custody. No interpreter was provided.

22. From Oct 28 to Oct 30, 72 hours' hearing was held regarding the dependency case. Jason's two main treating physicians, Dr. John Green and Dr. Hal Gbedawo, and also autism specialist, parent of autism family, Dr. Angela Hugebeck testified in support of the family. Dr. Green indicated that he was collaborating care with Jason's local doctor, Dr. Gbedawo, and they know each other. Occupational therapist, Ms. Brooke provide a progress report to the court. Greiner, Ms. Greiner also is aware that the family sees the autism specialist besides some filling clinics. Ms. Greiner previously wrote letter directly to Dr. Green. Ms. Greiner is aware that the family is seeing the speech therapist and as well as the ABA therapist.

23. On 72 hours' hearing, the judge was "outrageous" that the doctors never tried to review the child's medical records, never tried to the talk with the child's main treating

Page 5 of _____

physician, and never tried to talk with parents. The judge ordered the doctor (Dr. Migita) to talk with Dr. Green.

24. The judge concluded that he did not see parents pose any harms for the children, and "felt satisfied with Leo back home" but placed Jason out of home for 30 days only as "experimental purpose".

25. According the CPS discovery, on Nov 5, 2013, SCAN case conference was held, participants including 2 CPS supervisors, 2 CPS SW, Children's SW, Children's protection team, Natalie D'Amico, detective from Redmond PD. Records wrote that *"Naturopaths (referred to Dr. Gbedawo) working with the family recommended different diets for the parents for Jason to follow."*

26. According to CPS discovery, on Nov 7, 2013, CPS social worker provided a list of witnesses to Officer N. D'Amico including names of occupational therapist Ms. Brooke Greiner, Dr. John Green (who is a MD but was mistakenly identified as "ND"), Dr. Gbedawo.

27. According to CPS discovery, on Nov 12, 2013, CPS decided that ". **Both parents** are getting a FOUNDED finding for neglect."

28. On Nov 14, 2013, Occupational therapist Ms. Brooke Greiner received requests for information from Redmond Police. Ms. Greiner sent over the documents by certified mail to the police department.

29. On Nov 20, 2013, Dr. John Green's office sent over a package of medical records to Redmond City Police Department as requested, in which it was clearly stated that it was Dr. Green who prescribed the special diet for Jason due to his digestive distress. Dr. Green told the detective through phone that he does not think parents ever abuse and neglect Jason, but on the contrary, they are good parents, acting on the children's best interests. Dr. Gbedawo's office also sent medical records to the police department on Nov 18, 2013 per request. In Dr. Gbedawo's notes, it was clearly stated that it was Dr. Gbedawo who had prescribed diet treatment for Jason.

Page 6 of _____

30. Starting from Nov, 2013, CPS offered to return Jason back home with conditions for parents, first orally later in writing. The attorney who handled CPS dependency case described the CPS conditions in that the case will be dismissed in six months if parents accepted these conditions. Plaintiff Naixiang Lian asked Plaintiff Susan Chen to explicitly say to these conditions and confronted with CPS caseworker directly.

31. On Dec. 9, 2013, Officer N. D'Amico signed a probable cause certification for the arrest of Plaintiff Ms. Chen with a police report and later filed a police report with the King County Prosecuting Attorney's Office in support of felony charges, both of which contained falsehoods and materials omissions about Plaintiff Ms. Chen's treatment of her children. Officer D'Amico selectively included information from Dr. Halamay and a resident from Seattle children's Hospital. None of the information in plaintiffs' favor from the child's main treating physicians Dr. Green, Dr. Gbedawo, Ms. Gbedawo were included. The names of these witnesses were not even mentioned.

32. On Dec 9, 2013 police report, Officer N. D'Amico wrote that "Chen restricted JL from eating many things such as carbohydrates although she was never told JL could not have carbohydrates by any doctor". Based on medical records, removing carb from Jason's diet is the instruction from Dr. Green and Dr. Gbedawo. Based on evidence, Jason's father (NOT Jason's mother Susan Chen) is the main caregiver for Jason for providing foods to two children. Based on evidence from CPS discovery, Officer D'Amico was fully aware that Dr. Gbedawo prescribed diet treatment (removing carb) for Jason as early as Nov 5, 2013.

33. On Dec. 9, 2013 police report, Officer N. D'Amico wrote "All other causes of JL's condition aside from malnutrition had been ruled out". However, based on the medical records from Seattle Children's Hospital, Dr. Green, Dr. Gbedawo, Pediatric Associates, the child has failure to gain weight due to at least two years' history of digestive distress and the family had been seeking medical cares.

34. On Dec 9, 2013 police report, Officer D'Amico wrote that "she (plaintiff Susan Chen) refused to share information amongst these providers. It is a common knowledge that a referral is needed to see specialist so the referring doctors and specialist know each other. Secondly, Dr. Green stated explicitly that he is collaborating care for Jason with Dr. Gbedawo, occupational therapist Ms. Greiner knows Dr. Green, ABA therapist, speech therapist.

35. Officer D'Amico claimed in her report that "There is a probable cause to believe Susan withheld basic necessities of life to include nutrition as Jason was diagnosed as grossly malnourished and dehydrated upon arrival at Seattle Children's Hospital". According to police investigation report, Officer D'Amico was fully aware that Plaintiff Naixiang Lian is the primary care giver for providing foods to the children..

36. Defendant D'Amico's police report was written on Dec. 9, 2013 while witnesses Dr. Green, Dr. Gbedawo, Ms. Greiner were contacted well before this date. Officer D'Amico collected extensive medical records regarding treatment for Jason Lian but the information for all these witnesses supporting plaintiffs were withheld from the court.

37. On Jan 31, 2014, an arrest warrant was issue for Susan Chen (case No. 14-2-00377-0 SEA). Plaintiff Susan Chen was charged with Criminal Mistreatment In The Second Degree". Plaintiff Naixiang Lian was NOT charged for any crimes.

38. On Feb 18, 2014, plaintiff Susan Chen was arrested, handcuffed, fingerprinted, and pictured in Seattle, Washington. Plaintiff was released later due to a conflicting court order from dependency court, with conditions of turning in passport and only staying in King county. Plaintiff Susan Chen's brother became very sick and shortly passed away in China but plaintiff was not allowed to leave the country to stay with him for last minute of his life and count not even attend his funeral. Plaintiff Susan Chen suffers from extreme mental anguish and stress.

39. The negligent investigation by Officer D'Amico led to adverse and prolonged placement to the disabled child, Jason Lian, a decision left in place through September 12, 2014 when the court dismissed the dependency action related to Jason Lian.

40. Due to the pending criminal charges, the dependency case had to be continued and delayed Plaintiff's son JL return home. Jason Lian was moved among more than eight times in foster homes, once stayed in a place in Bellingham for only 4 hours in the midnight. Jason was mistreated in foster home, denied therapy treatment, withheld prescribed medications and experienced significant regression documented by treatment team.

Page 8 of _____

41. Plaintiff Susan Chen's criminal defense attorney, Ms. Twyla Carter noticed that tons of information in Plaintiff's favor was omitted for this case. Ms. Carter thus submitted a complete file of information from the medical providers who have been working with Plaintiffs' family for a long time to the prosecutor's office to review. Plaintiff Susan Chen's dependency defense attorney, Ms. Lorraine Roberts sent over one copy of the file from Ms. Carter to Assistant Attorney General's office who responded quickly for considering a dismissal of the case.

42. On Sep 19, 2014, the criminal charges against Plaintiff Susan Chen was dismissed. The dismissal order wrote that "the state is unable to sustain its burden of proof in this case due to evidence discovered **after** the time filing". The dependency case was dismissed at almost the same time.

43. Ms. Chen was charged with criminal mistreatment, II degree based on materials provided by Defendant Officer D'Amico. The arrest warrant was issue based on Defendant D'Amico's report with selective data submitted to the prosecutor's office. Ms. Chen was arrested without probable cause.

44. As a result of the criminal charges and false arrest alleged herein, and due directly to the actions taken by the Defendant D'Amico, Ms. Chen suffered and continues to suffer physical pain, emotional trauma, discomfort, humiliation, fear, anxiety and embarrassment, among other things. Plaintiff Susan Chen was found to suffer continuous headache resulting from **cardiovascular disease (with no family history)**, a disease typically for people over 70 years old.

## DAMAGES

45. As a direct and proximate result of the acts of defendants, plaintiffs suffered the following injuries and damages:

    a. Violation of Plaintiff Susan Chen's rights pursuant to the Fourth and Fourteen Amendments to the united States Constitution to be free from an unreasonable search and seizure of their person;

b. Violation of their due process rights under Brady v. Maryland, 373 U. S. 83 (1963) that requires the disclosure of "evidence favorable to an accused upon request… where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). In Youngblood v. West Virginia, 547 U.S. 867, 870 (2006), the Supreme Court stated that Brady is violated when the government fails to turn over evidence that is "known only to police investigators and not to the prosecutor."

c. Violations of their due process rights to interpreter. Under Title VI of the federal Civil Rights Act of 1964, discrimination on the basis of race, color or national origin is prohibited. Non-English speakers also has constitutional protections to interpreters, as the U.S. Supreme Court first held in Meyer v. Nebraska (1923).

d. Violations of their "Miranda rights" because the law requires that the suspect must be given the opportunity to exercise these rights throughout the interrogation, not just upon arrest (Miranda v. Arizona, 1966, p. 479).

e. Physical pain and suffering; Plaintiff Susan Chen suffered from continuous headache from cardiovascular disease from extreme stress, typically for people over 70 years old.

f. Emotional trauma and suffering, including discomfort, humiliation, fear, anxiety, frustration, emotional distress, mental anguish.

g. Plaintiff Susan Chen suffered from continuous headache from cardiovascular disease from extreme stress, typically for people over 70 years old.

h. Loss of liberty for Plaintiff Susan Chen

i. Deprived of parental rights to their children under 42 U. S. C & 1983.

    j. Adverse placement decision to Plaintiffs' child out of home for ten months and caused a 3-year old disabled child who encountered lasting damages in foster homes.

## FIRST CLAIM: MUNICIPAL LIABILITY FOR CONSTITITION VIOLATIONS

46. The above paragraphs are here incorporated by reference.

47. The CITY OF REDMOND directly caused the constitutional violations suffered by Plaintiffs, and is liable for the damages suffered by Plaintiff as a result of the conduct of the defendant officer. The conduct of the defendant officer was a direct consequence of policies and practices of Defendant CITY OF REDMOND.

48. At all times relevant to this complaint Defendant CITY OF REDMOND, acting through RCPD, had in effect policies, practices, and customs that condoned and fostered the unconstitutional conduct of the individual defendants, and were a direct and proximate cause of the damages and injuries complained of herein.

49. The aforesaid event was not an isolated incident. The City of Redmond knew or should have known of a disturbing number of their police officers engage in misconduct of the type alleged herein. Upon information and belief, prior to December 9, 2013, the CITY OF REDMOND was aware of claims of constitutional violations, as documented in the following civil rights actions filed against the CITY:

*Adler v. City of Redmond, 1995, alleging that Dianne Adler was zapped several times with a stun gun, handcuffed and arrested without probable cause by two police officers responding to a call for assistance from a King County Animal Control officer.*

*Turngren v. King County, 104 Wn. 2d 293 (1985), 705 P. 2d 258, in the action against King County, the King County Department of Public Safety, the City of Redmond, its police department, Turngrens established a prima facie case for malicious prosecution, false arrest and false imprisonment, and libel and slander.*

50. Despite its knowledge of such incidents of prior misconduct, the CITY OF REDMOND failed to take remedial action.

51. It was the policy and/or custom of the CITY OF REDMOND to inadequately train, supervise and discipline its police officers, including the defendant officer, thereby failing to adequately discourage further constitutional violations on the part of its police officers.

52. As a result of the above described policies and customs, police officers of the CITY OF REDMOND, including the defendant officer, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

53. The wrongful policies, practices, customs and/or usages complained of herein, demonstrated a deliberate indifference on the part of policymakers of the CITY OF REDMOND to the constitutional rights of persons within the city, and were the direct and proximate cause of the violations of Plaintiffs' rights alleged herein.

## SECOND CLAIM: NEGLGENCE

54. Plaintiffs re-allege and incorporate by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

55. Defendant D'AMICO, while acting as agent and employee for Defendant CITY OF REDMOND, in her capacity as a detective for the CITY OF REDMOND, owed a duty to Plaintiff to perform her police duties without withholding evidence favorable to Plaintiff Susan Chen. Defendant D'AMICO's withholding evidence caused Plaintiff Susan Chen to be charged with criminal mistreatment, II degree, when Plaintiff Chen did not commit this crime.

56. Defendant D'AMICO's misconduct of withholding evidence when Defendant D"AMICO had no lawful authority to cause Plaintiff Susan Chen's false arrest and imprisonment constitute negligence for which Defendant D'AMICO is individually liable.

57. As a proximate result of Defendant D'AMICO's negligence for withholding evidence in favor of Plaintiff Susan Chen, Plaintiff Chen sustained physical and emotional pain and suffering, and was otherwise damaged and injured.

58. Plaintiff Chen and Lian suffered and continue to suffer emotional distress and other damages as a result of Detective Officer D'Amico's negligence that continued through

September 12, 2014 when the court dismissed the dependency action related to Jason Lian, and criminal charges were dismissed against Ms. Chen on September 19, 2014.

### THIRD CLAIM: RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF REDMOND FOR STATE LAW VIOLATIOMS

59. Plaintiffs re-allege and incorporate by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

60. The conduct of Defendant D'AMICO alleged herein occurred while she was on duty and in uniform, and during the course and scope of her duties and functions as a REDMOND CITY police officer, and while she was acting as an agent, officer, servant and employee of Defendant CITY OF REDMOND. As a result, Defendant CITY OF REDMOND is liable to Plaintiff pursuant to the state common law doctrine of respondeat superior.

### FOURTH CLAIM: NEGLIGENT SUPERVISION, RETENTION AND TRAINING

61. Plaintiffs re-allege and incorporate by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

62. Defendant CITY OF REDMOND negligently trained, retained, and supervised Defendant D'AMICO. The acts and conduct of Defendant D'AMICO were the direct and proximate cause of injury and damage to Plaintiffs and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of Washington.

Page 14 of _____

63. As a result of the foregoing, Plaintiff Chen was deprived of her liberty, was subjected to great physical and emotional pain and suffering, and was otherwise damaged and inured.

64. As a result of he foregoing, Plaintiff Lian and Chen were deprived of their parental rights to their children, were subject to great emotional pain and suffering, and were otherwise damaged and injured.

**WHEREFORE,** Plaintiffs demand the following relief jointly and severally against all of the defendants:

a. Compensatory damages in the amount to be determined by a jury;

b. Punitive damages in an amount to be determined by a jury;

c. The conventing and empaneling of a jury to consider the merits of the claims herein;

d. Costs and interest and attorney's fees;

e. Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Page 15 of _____

1  Susan Chen   *Susan Chen* (signature)
2  Naixiang Lian   (signature)
3
4
5  Dated this 21st day of December, 2016
6  Redmond, Washington
7
8
...
28

Page 16 of _____